Robin **CHRISMON** and Lonnie Chrismon, Appellants,

v.

Harold J. **BROWN, Individually and as an Agent of Registered Teams of the Amateur Softball Association of America, and Registered Teams of the Amateur Softball Association of America, Appellees.**

No. 14–05–00822–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 27, 2007.

Supplemental Majority Opinion on Overruling of Rehearing Jan. 10, 2008.

---

John H. Boswell, Kevin Dubose, Houston, for appellants.

Scott Garyt Hunziker, Terry Fitzgerald, The Woodlands, for appellees.

Panel consists of Justices FOWLER, FROST and EDELMAN.*

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

A volunteer assistant coach on a girls softball team sustained injuries when she was struck in the face by a bat that slipped from the hand of the volunteer head coach during a softball drill. The injured assistant coach and her husband appeal the trial court's summary judgment dismissing their claims against the head coach and the softball association. In reviewing the trial court's summary judgment as to the allegation that the softball association is vicariously liable for the head coach's alleged acts or omissions, we must determine what duties, if any, one sports participant owes to another sports participant, which is an issue of first impression in this court. We hold that (1) a sports participant owes no negligence duty to another sports participant regarding risks inherent in the sport in question; (2) a sports participant owes a negligence duty to another sports partici-

* Senior Justice Richard H. Edelman sitting by assignment.

pant regarding risks that are not inherent in that sport; and (3) regardless of whether the risk is inherent, a sports participant owes a duty not to cause injury to another sports participant by gross negligence or intentional conduct.

In response to the softball association's no-evidence ground, the plaintiff/assistant coach did not produce evidence showing that the risk in question was not inherent in the sport in which she was engaged when she was injured. The summary-judgment evidence did not raise a fact issue as to whether the head coach engaged in gross negligence or intentional conduct. Therefore, this court affirms the trial court's summary judgment as to the assistant coach's vicarious-liability claims against the softball association. We also conclude the trial court correctly granted (1) the head coach's motion for summary judgment in which he asserted immunity under the Charitable Immunity and Liability Act of 1987, and (2) the softball association's motion for summary judgment in which it sought dismissal of all direct-liability claims against it and all claims asserted by the assistant coach's husband. Though this is the first case in which this court has adopted and applied the inherent-risk doctrine, under Texas Supreme Court precedent, we do not have the power to reverse the trial court's error-free judgment and remand in the interest of justice. Therefore, we affirm the trial court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Robin Chrismon and appellee Harold J. Brown volunteered to serve as coaches through appellee Registered Teams of the Amateur Softball Association of America ("Registered Teams"). In January 2002, while acting as a volunteer assistant coach at a twelve-year-old-and-under girls softball team practice and/or tryout,[1] Robin was injured when a bat being swung by Brown slipped from his hand and struck Robin in the face.

As relevant to this appeal, Robin sued Brown and Registered Teams alleging negligence, gross negligence, and assault. Robin's husband, Lonnie Chrismon, asserted claims for loss of household services, loss of consortium, loss of income, and mental anguish.

Brown filed a traditional motion for summary judgment, asserting the affirmative defense of immunity under the Charitable Immunity and Liability Act of 1987 ("the Act").[2] Registered Teams filed motions for summary judgment, asserting, among other things, that there was no evidence as to: (1) a legal duty, (2) a breach of duty, and (3) damages proximately resulting from the breach. The trial court granted summary judgment dismissing all of the Chrismons' claims.

### II. STANDARDS OF REVIEW

In reviewing a traditional summary judgment, we consider whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). To be entitled to summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum,*

---

1. While Brown hit grounders to the players on the field, Robin was a short distance away catching balls that were thrown back.

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 84.001–.008 (Vernon 2005).

*Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Under this standard, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *Id.*

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex.2002). We take as true all evidence favorable to the nonmovant, and we make all reasonable inferences therefrom in the nonmovant's favor. *Dolcefino*, 19 S.W.3d at 916. A no-evidence motion for summary judgment must be granted if the party opposing the motion does not respond with competent summary-judgment evidence that raises a genuine issue of material fact. *Id.* at 917. When, as in this case, the trial court does not specify in the order granting summary judgment the grounds upon which the trial court relied, we must affirm summary judgment if any of the independent summary-judgment grounds is meritorious. *See Ramco Oil & Gas Ltd. v. Anglo–Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 826 (Tex. App.-Houston [14th Dist.] 2006, pet. denied).

### III. ANALYSIS

**A. Did the trial court err in granting the volunteer head coach's motion for summary judgment?**

In their first issue, the Chrismons challenge the summary judgment for Brown, the volunteer head coach, on the ground that a fact issue exists as to whether Brown's conduct fell outside the scope of civil immunity because it was wilfully negligent, or committed with conscious indifference or reckless disregard for the safety of others.

■ Volunteers of certain charitable organizations are generally immune from civil liability for any act or omission resulting in death, damage, or injury if the volunteer was acting in the course and scope of the volunteer's duties or functions in the organization. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 84.004(a) (Vernon 2005). Brown's summary-judgment evidence establishes (and the Chrismons do not dispute) that Registered Teams qualifies as a charitable organization under the Act and that Brown was acting in the course and scope of his duties as a volunteer of Registered Teams when the accident occurred. This evidence proves as a matter of law that Brown is entitled to immunity under the terms of section 84.004(a) of the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 84.004(a).

This immunity, however, does not apply to an act or omission that is intentional, wilfully negligent, or done with conscious indifference or reckless disregard for the safety of others. *See id.* § 84.007(a). Though the Chrismons do not assert that Brown's conduct was intentional, they do assert that the summary-judgment evidence raises a genuine issue of fact as to whether Brown's act or omission falls within the statutory exception as being "wilfully negligent, or done with conscious indifference or reckless disregard for the safety of others" (hereinafter the "Exception"). *See id.*

Although the Act is twenty-years old, research has not revealed any case in

which a court has interpreted the statutory language of the Exception. However, in interpreting language from other statutes, the Texas Supreme Court, this court, and other courts of appeals have equated each of these three terms with gross negligence. *See, e.g., Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 916–20 (Tex.1981) (equating willful negligence, conscious indifference to the welfare of others, and reckless disregard for the rights of others with gross negligence); *Morrone v. Prestonwood Christian Academy,* 215 S.W.3d 575, 582 (Tex.App.-Eastland 2007, pet. denied) (equating willful misconduct and reckless disregard with gross negligence); *Dunlap v. Young,* 187 S.W.3d 828, 835–36 (Tex. App.-Texarkana 2006, no pet.) (equating willful negligence and reckless disregard with gross negligence); *Hernandez v. Lukefahr,* 879 S.W.2d 137, 141–42 (Tex.App.-Houston [14th Dist.] 1994, no writ) (equating willful negligence and conscious indifference with gross negligence); *Wheeler v. Yettie Kersting Mem. Hosp.,* 866 S.W.2d 32, 50 & n. 25 (Tex.App.-Houston [1st Dist.] 1993, no writ) (equating willful negligence and reckless disregard with gross negligence). Therefore, we conclude that, to fall within the Exception, the volunteer's act or omission must constitute "gross negligence," defined as an act or omission: (a) which, when viewed objectively from the standpoint of the actor at the time of occurrence, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (b) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11) (Vernon Supp.2006).

The Chrismons assert there is a fact issue regarding the Exception based on summary-judgment evidence showing the following:

- Brown stood in an inappropriate or dangerous position while hitting softballs with a bat that he held with only one hand.
- Brown did not warn Robin that she might be in a position of danger.
- Brown gave no safety instructions to anyone on the day of the incident.
- Brown took no special precautions to make sure the bat would not fly out of his hand.
- Brown knew of the possibility that the bat could fly out of his hand and strike another person.
- Brown allowed the bat to fly out of his hand, travel at a high rate of speed, and hit Robin in the face.
- No one other than Brown had anything to do with that bat hitting Robin in the face.
- Brown did not have any excuse or reason for letting the bat go.
- Brown acknowledges that he was responsible for Robin's injuries. He accepts that responsibility and wishes this accident had not happened.

■ The Chrismons, however, cite no evidence that Brown's alleged acts or omissions, when viewed objectively from Brown's standpoint at the time of the incident, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. The Chrismons cite no evidence showing that despite his actual, subjective awareness of such a risk, Brown proceeded with conscious indifference to the rights, safety, or welfare of others. *See Diamond Shamrock Ref. Co. v. Hall,* 168 S.W.3d 164, 171–73 (Tex.2005) (concluding there was no evidence of gross negligence where a de-

fendant knew that certain valves were leaking, but did not know that it presented any danger of a compressor explosion); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234–35 (Tex. 2004) (same where defendant had no actual awareness that the replacement parts it was installing on its vehicles were defective); *and Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex.1993) (same where defect did not pose an extreme risk of injury for failing to warn and repair a defect, when no other persons had fallen because of it). All of the evidence, including Robin's own testimony, shows that Brown was hitting ground balls in a routine way and that the incident, though terribly unfortunate, was purely accidental. Because Brown's summary-judgment motion and evidence establish his defense of immunity as a matter of law, and because the Chrismons' response and evidence failed to raise a fact issue as to whether the Exception applies, the Chrismons' challenge to the summary judgment in favor of Brown fails.[3] Accordingly, we overrule the Chrismons' first issue.

**B. Did the trial court err in granting the softball association's motion for summary judgment as to direct liability?**

The Chrismons alleged that Registered Teams was directly liable for its own negligence in: (1) failing to implement an appropriate safety program; (2) selecting Brown as its agent; and (3) failing to notify the Chrismons that if Robin were injured while acting as a volunteer assistant coach, Registered Teams would deny recovery because the head coach was a volunteer in a charitable organization;

therefore, Registered Teams was "guilty of fraud" for failing to disclose those facts.

To counter Registered Teams's no-evidence motion for summary judgment, in which Registered Teams attacked the elements of legal duty, breach of legal duty, and damages proximately resulting therefrom, the Chrismons, in their summary-judgment response, merely stated that Robin's deposition transcript and affidavit were attached and that each "raises numerous fact issues that require a jury trial on the merits of this case." However, the attached deposition transcript contains roughly 120 pages of testimony, and the affidavit, besides containing a recitation of Robin's extensive background in softball, is no more than a conclusory statement of her allegations against Brown. Her affidavit does not address the allegations of direct liability against Registered Teams at all.

To defeat a no-evidence motion for summary judgment, the respondents are not required to marshal their proof; they need only point out evidence that raises a fact issue on the challenged items. *See* Tex.R. Civ. P. 166a cmt.; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207–08 (Tex.2002); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 330–31 (Tex. App.-Houston [14 Dist.] 2005, no pet.). In her affidavit, Robin does not address the allegations of direct liability against Registered Teams. In their response to Registered Teams's no-evidence motion for summary judgment, the Chrismons do not specify which evidence in Robin's deposition testimony allegedly raises a fact issue as to any of the challenged elements of direct liability against Registered Teams. Therefore, the trial court did not err in

---

**3.** The Chrismons refer to various objections they lodged against an expert affidavit attached to Brown's motion for summary judgment; however, even ignoring this affidavit, the evidence conclusively proves Brown's defense of immunity. Therefore, we need not address the objections to this affidavit.

granting Registered Teams's motion as to direct liability. Accordingly, we overrule the Chrismons' challenges to the summary judgment as to their direct-liability claims against Registered Teams. *See San Saba Energy, L.P.*, 171 S.W.3d at 330–31.

**C. Did the trial court err in granting the softball association's motion for summary judgment as to the husband's claims?**

■ In their briefs, the parties acknowledge that Lonnie's claims for loss of household services, loss of consortium, loss of income, and mental anguish as a result of Robin's injury are derivative of Robin's claims. Registered Teams asserted a no-evidence challenge to the essential element of Lonnie's claimed damages. In his initial summary-judgment response to Registered Teams' motion, Lonnie did not attach or point to any evidence allegedly raising a fact issue as to damages. However, in a supplemental response, Lonnie attached and pointed to his affidavit, asserting that in it he raised a genuine issue of material fact as to the element of damages. In this affidavit Lonnie states the following:

I have sustained the following actual damages as a result of the injuries received by my wife Robin Chrismon which were caused by the acts or omissions of the Defendants herein. They are:

A. Loss of household services I have sustained in the past and in reasonable probability will sustain in the future which are in excess of $1,000.00.

B. Loss of consortium sustained in the past and in reasonable probability will sustain in the future which are in excess of $1,000.00.

C. Loss of income sustained in the past and in reasonable probability

will sustain in the future which I estimate to be in the range of $5,000.00 to $6,000.00 as of this date.

These statements are conclusory. They provide no facts showing the basis for the alleged damages, the periods of time in which they allegedly were suffered, or how the dollar amounts were determined. Two of the dollar amounts are simply stated as "in excess of $1,000.00." These conclusory statements do not raise a genuine issue of material fact precluding summary judgment. *See Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex.2004) (stating that even unobjected-to conclusory testimony does not raise a fact issue); *Thomas v. Allstate Ins. Co.*, No. 14–05–00293–CV, 2006 WL 2290840, at *5 (Tex.App.-Houston [14th Dist.] Aug. 10, 2006, no pet.) (mem.op.) (holding that conclusory statements in affidavit did not raise a genuine issue of material fact regarding damages).

On appeal, under his fourth issue, Lonnie also states that portions of his deposition testimony raise a genuine fact issue as to his damages. Although Lonnie refers to various pages of the transcript of his deposition, he does not provide any citations to the appellate record showing this court what evidence he claims raises a fact issue. Therefore, we conclude that insofar as Lonnie's challenge to the summary judgment is based on fact issues allegedly raised by his deposition testimony, he has waived that challenge. *See* Tex.R.App. P. 38.1(h). In any event, even absent briefing waiver, Lonnie could not prevail on this point because he did not attach the transcript of his deposition to any summary-judgment response in the trial court, and he did not point the trial court to this evidence as allegedly raising a fact issue as

to his claimed damages.[4] *See San Saba Energy, L.P.*, 171 S.W.3d at 330–31. Lonnie never apprised the trial court that he was relying on this evidence, nor did he specify how it raised any fact issues in his favor (if indeed it did, which we do not address). For this additional reason, we find no merit in Lonnie's challenge to this part of the summary judgment.

We conclude the trial court did not err in granting Registered Teams's motion for summary judgment as to Lonnie's claims, and we overrule the fourth issue in which Lonnie challenges this summary-judgment ruling.

### D. Did the trial court err in granting the softball association's motion for summary judgment as to the vicarious-liability claims?

The Chrismons alleged that Registered Teams is vicariously liable for Brown's alleged acts or omissions (hereinafter "vicarious-liability claims"). Under these claims, Registered Teams would be liable for the tort liability of the volunteer head coach (Brown), Registered Team's alleged agent. Although Brown is immune from negligence liability under Chapter 84 of the Texas Civil Practice and Remedies Code, this immunity does not apply to the potential vicarious liability of Registered Teams

for the common-law torts of Brown, its alleged agent.[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 84.004 (Vernon 2005). Therefore, to determine Registered Teams's vicarious liability, if any, we must analyze, under the common law, Brown's potential tort liability for Robin's injuries.

The Texas Supreme Court has not yet spoken as to what standard of tort liability should be applied *vis-à-vis* a personal-injury claim by one sports participant against another sports participant.[6] *See Southwest Key Program, Inc. v. Gil–Perez*, 81 S.W.3d 269, 271–72 (Tex.2002). There are four main possibilities.

First, in fashioning liability rules in the sports-injury context, a few states apply a general-negligence duty. *See id.* at 271 (stating that, in sports-injury cases, "a few states adhere to the traditional negligence standard"). This approach, though simple in application, unduly exposes sports participants to tort liability as to risks inherent in the sport in which the injured person chose to participate. *See Phi Delta Theta Co. v. Moore*, 10 S.W.3d 658, 659–63 (Tex.1999) (Enoch, J., joined by Hecht, J., dissenting to denial of petition after court determined it was improvidently granted); *Davis v. Greer*, 940 S.W.2d 582, 582–83 (Tex.1996) (Gonzalez, J., dissenting from denial of application for writ of error).

---

**4.** In no part of any summary-judgment response does Lonnie describe or refer to the transcript of his deposition. Registered Teams, however, attached excerpts from the transcript of Lonnie's deposition to its reply to Lonnie's summary-judgment response.

**5.** In their fifth issue, the Chrismons challenge the summary judgment granted in favor of Registered Teams on the ground that the Act allows charitable organizations to be held vicariously liable for the acts and omissions of volunteers who are themselves immune from liability. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 84.004(e) (Vernon 2005) ("The provisions of this section apply only to the liability of volunteers and do not apply to the liability of the

organization for acts or omissions of volunteers."); *Howle v. Camp Amon Carter*, 470 S.W.2d 629, 630 (Tex.1971) (abolishing common-law doctrine of charitable immunity and holding that a charitable enterprise is subject to vicarious liability under the rule of respondeat superior that is applicable to business organizations operated for profit). However, because Registered Teams's motions for summary judgment did not assert immunity, this issue lacks merit, and we overrule it.

**6.** We need not and do not address the duties owed by a nonparticipant in a sport to a participant.

In a second approach, the majority of other states, and all Texas courts of appeals that have addressed the issue, hold that there is no negligence duty in the sports-injury context, but they conclude there is a duty not to cause injury by reckless or intentional conduct.[7] *See Monk v. Phillips,* 983 S.W.2d 323, 324–26 (Tex.App.-Fort Worth 1998, pet. denied); *Allen v. Donath,* 875 S.W.2d 438, 440 (Tex. App.-Waco 1994, writ denied); *Hathaway v. Tascosa Country Club, Inc.,* 846 S.W.2d 614, 616–17 (Tex.App.-Amarillo 1993, no writ); *Connell v. Payne,* 814 S.W.2d 486, 489 (Tex.App.-Dallas 1991, writ denied). Though this standard does not impose a negligence duty as to risks inherent in the sport, it has the negative effect of imposing no negligence duty even as to risks of injury that are not inherent in the sport.[8]

Under a third approach, this court could hold that, in sports-injury cases, a participant owes no duty to protect other participants from risks inherent in the sport—not even the duty to refrain from reckless or intentional conduct; however, as to risks that are not inherent in the sport, a participant owes a general negligence duty as well as a duty to refrain from reckless or intentional conduct. *See, e.g., Davis,* 940 S.W.2d at 582–83 (advocating this approach in dissent from denial of application for writ of error). Though this approach addresses the risks of injury inherent in the sport, it goes too far by immunizing from liability participants who intentionally injure other participants in cases in which the risk of injury is inherent.

■ A fourth approach, which we conclude is best,[9] is governed by the following legal standard:

- Considering from an objective standpoint the nature of the sport in question, the conduct that is generally accepted in that sport, and the risks resulting from that conduct, if the risk that resulted in the plaintiff's injury is inherent in the nature of the sport in which the plaintiff chose to participate, then a participant-defendant owes the plaintiff no negligence duty.

**7.** Our dissenting colleague cites three additional cases. *See post* at p. 119, n. 7. However, two of these cases are not on point because they did not raise the issue of the duty owed by one sports participant to another sports participant. *See Southwest Key Program, Inc. v. Gil–Perez,* 79 S.W.3d 571, 575–76 (Tex.App.-Corpus Christi 2000), *rev'd on other grounds,* 81 S.W.3d 269, 274–75 (Tex. 2002); *Moore v. Phi Delta Theta,* 976 S.W.2d 738, 741–42 (Tex.App.-Houston [1st Dist.] 1998, writ denied). The third case is also not on point because the appellants in that case did not assign error as to the trial court's dismissal of their negligence claim *Greer v. Davis,* 921 S.W.2d 325, 327 (Tex.App.-Corpus Christi 1996, writ denied).

**8.** Our dissenting colleague suggests that adoption of this rule by four sister courts of appeals weighs against this court's adoption of the inherent-risk doctrine. *See post* at pp. 118–19. Though we have given due consider-

ation to the decisions of these sister courts, we are not bound to follow them and respectfully decline to do so.

**9.** Our dissenting colleague states that it is not apparent to him why this legal standard regarding one sports participant's duty to another sports participant is different from the implied-assumption-of-the-risk doctrine, which the Texas Supreme Court has abrogated. *See Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975); *post* at pp. 119–20, n. 9. However, we agree with Justice Hecht and former Justice Enoch that there is a meaningful distinction between implied assumption of the risk—an affirmative defense that applies even if the defendant is negligent—and the inherent-risk doctrine, which is not an affirmative defense but a legal standard for determining whether a sports participant owes a duty at all. *See Phi Delta Theta Co.,* 10 S.W.3d at 659–63; *see also Geiersbach v. Frieje,* 807 N.E.2d 114, 116–20.

- Under this same inquiry, if the risk that resulted in the plaintiff's injury is not inherent in the nature of the sport in which the plaintiff chose to participate, then a participant-defendant owes the plaintiff an ordinary negligence duty.

- Regardless of whether the risk that resulted in the plaintiff's injury is inherent in the nature of the sport in question, a participant-defendant owes a duty not to engage in gross negligence or intentional conduct causing injury to the plaintiff.[10]

See *Phi Delta Theta Co.*, 10 S.W.3d at 659–63 (Enoch, J., joined by Hecht, J., dissenting and arguing for a similar approach);

see also *Geiersbach v. Frieje*, 807 N.E.2d 114, 116–20 (Ind.Ct.App.2004) (adopting this approach and applying it to both coaches and players).[11] The trial court should determine as a matter of law the duty issue as to whether the risk that resulted in the plaintiff's injury is inherent in the nature of the sport, but the trial court still needs to consider evidence relevant to this issue.

In his deposition, Brown testified that, prior to the incident in question, a bat had flown out of his hand while he was coaching this particular softball team. Brown stated he knew that there was a possibility that the bat could fly out of his hand. At her deposition Robin testified as follows:

---

**10.** On appeal, Registered Teams has argued that this court can affirm the no-duty ground based on either the inherent-risk doctrine or the no-negligence-duty rule (the second approach stated above).

**11.** Our dissenting colleague asserts that this court is tacitly overruling prior decisions by the Texas Supreme Court in which that higher authority "affirmatively declined to adopt" the inherent-risk doctrine. *See post* at p. 119. The decisions to which our colleague refers are decisions to deny review in cases in which other courts of appeals addressed tort-liability standards in the sports-injury context. However, by declining to exercise discretionary review over decisions of our sister courts of appeals, the Texas Supreme Court indicated that it was *not* satisfied that the opinions in those cases declared the law correctly in all respects but was of the opinion that the application for writ of error (or petition for review) presented no error of law which required reversal or which was of such importance to Texas jurisprudence as to require correction. *See In re T.L.C.*, 948 S.W.2d 41, 45 n. 3. (Tex.App.-Houston [14th Dist.] 1997, no pet.); see also TEX R.APP. P. 56.1(b)(1). The high court's denial of review does not give any indication as to its view regarding the merits of the issues decided by the courts of appeals. *See Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex.2006); *Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 n. 2 (Tex.1990). Therefore, these denials of review do not constitute decisions in which

the Texas Supreme Court has declined to adopt the inherent-risk doctrine. *See Ianni*, 210 S.W.3d at 596. Although various justices on that court have advocated granting review to adopt the inherent-risk approach to tort liability for sports-injury claims, the high court has never addressed this issue, as the court itself recently acknowledged. *See Southwest Key Program, Inc.*, 81 S.W.3d at 271–72 (noting Texas Supreme Court has not addressed this issue but stating that court did not need to address it to resolve the case at hand); *Phi Delta Theta Co.*, 10 S.W.3d at 658–63 (Tex.1999) (Enoch, J., joined by Hecht, J., dissenting to denial of petition after court determined it was improvidently granted) (stating that court should grant review to address important issue not yet addressed by the Texas Supreme Court and to adopt the inherent-risk doctrine); *Davis*, 940 S.W.2d at 582–83 (Tex.1996) (Gonzalez, J., dissenting from denial of application for writ of error) (stating that Texas Supreme Court should grant review to address this issue and to adopt the inherent-risk approach). Because the Texas Supreme Court has not yet adopted a rule in this area, no ruling from this court could conflict with any of that higher court's precedents. Therefore, this court can and should address this important issue regarding Texas common-law tort liability, as have four other Texas intermediate courts of appeals. *See Monk*, 983 S.W.2d at 324–26; *Allen*, 875 S.W.2d at 440; *Hathaway*, 846 S.W.2d at 616–17; *Connell*, 814 S.W.2d at 489.

- Robin was injured while involved in a drill in which Brown would hit ground balls and the players would try to field the balls and throw them back to Robin (hereinafter "Ground Ball Drill").
- Robin had participated in the Ground Ball Drill before the incident in question, and the players and coaches would typically do the Ground Ball Drill during tryouts.
- The Ground Ball Drill is "pretty routine," and there was nothing unusual about the way the Ground Ball Drill was conducted.
- Prior to this incident, Robin had never had anything like this happen.

In her summary-judgment affidavit, Robin testified as follows:

- Robin has been involved in women's softball as a player and coach for about twenty years, and she is very familiar with all of the practices and drills in which women softball players participate during practice sessions.
- Because of her twenty years of experience, Robin believes that she has special expertise and knowledge regarding women's softball activities, including practice drills such as the Ground Ball Drill. Robin is very familiar with the Ground Ball Drill.
- The technique that Brown used during the Ground Ball Drill was very dangerous as shown by the serious injuries that Robin received when an aluminum bat flew out of Brown's hand at a high rate of speed directly into Robin's face and mouth, causing her injury.

 Although Registered Teams asserted a no-evidence challenge[12] as to

---

**12.** On appeal, Robin states that Registered Teams did not assert in its May 23, 2005 motion that it owed no legal duty to Robin and that Registered Teams did not assert any no-evidence summary-judgment grounds against her claims. However, in that motion, Registered Teams asserted that "Plaintiffs have no evidence raising a genuine issue of material fact of any of the following essential elements ... legal duty owed by one person to another." Registered Teams asserted a no-evidence ground as to duty. *See Patino v. Complete Tire, Inc.,* 158 S.W.3d 655, 659–60 (Tex.App.-Dallas 2005, pet. denied). Indeed, this exact language is contained in Registered Teams's June 7, 2005 motion for summary judgment, which Robin concedes is a no-evidence motion. Both in its motion and on appeal, Registered Teams has asserted that its alleged agent Brown owed no negligence duty to Robin. Applying the inherent-risk doctrine, we conclude the summary-judgment evidence does not show that Brown owed a negligence duty. Therefore, there is a question in this case as to the existence of a negligence duty. *See post* at pp. 117–18 (stating that this court and Registered Teams agree there is a duty and the only real question is whether there is a fact issue as to breach of duty).

Our dissenting colleague also concludes that this court cannot adopt the inherent-risk doctrine because no party specifically asserted this doctrine in the trial court and because there is no summary-judgment ground before this court that raises this issue. We disagree.

Registered Teams asserted a no-evidence ground in which it attacked the essential element of duty. Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *See Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999). In its motion, Registered Teams asserted that there is no evidence of this essential element of Robin's claims. Under Texas Rule of Civil Procedure 166a(i), the burden shifted to Robin to point to and present evidence that raised a genuine issue as to whether there is a legal duty. *See* TEX.R. CIV. P. 166a(i). Therefore, this court has reviewed the trial court's summary-judgment ruling as to the vicarious-liability claims based on Registered Teams's no-evidence-of-duty ground.

Registered Teams was not required to outline in its motion the legal analysis under which it claims no duty arises under the facts and circumstances surrounding this

occurrence. *See* Tex.R. Civ. P. 166a(i) & cmt.; *Pico v. Capriccio Italian Restaurant, Inc.*, 209 S.W.3d 902, 912 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (affirming summary judgment granting motion which asserted simple ground that there was no evidence of duty, even though analysis of this ground required consideration of alter ego and corporate liability issues); *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 844–45 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (affirming summary judgment granting motion which asserted simple ground that there was no evidence of duty, even though analysis of this ground required consideration of various premises-liability issues); *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 659–60 (Tex.App.-Dallas 2005, pet. denied) (affirming summary judgment granting motion which asserted simple ground that there was no evidence of duty, even though analysis of this ground required consideration of various legal principles regarding an employer's duties). This court has held that an appellant preserved a no-duty complaint by asserting in its motion for judgment notwithstanding the verdict that it owed no duty, even though the analysis of this no-duty complaint involved consideration of at least seven different issues. *See Entex, A Division of Noram Energy v. Gonzalez*, 94 S.W.3d 1, 4, 6–11 (Tex. App.-Houston [14th Dist.] 2002, pet. denied).

Our dissenting colleague cites cases involving traditional motions for summary judgment. *See post* p. 117, n. 1. Appellate courts must affirm no-evidence motions for summary judgment based on the grounds stated therein. However, under the no-evidence summary-judgment rule, a ground that there is no evidence of legal duty is sufficient. *See* Tex.R. Civ. P. 166a(i) & cmt. Therefore, cases involving traditional motions for summary judgment are not on point. In addition, *Science Spectrum, Inc. v. Martinez*, does not conflict with this court's analysis. *See* 941 S.W.2d 910, 911–12 (Tex.1997). In that case, the Texas Supreme Court concluded that the one ground stated in the traditional motion—that the movant owed no duty to the plaintiff because it did not control the premises where the accident occurred—was insufficient to entitle the movant to summary judgment because the movant would have a duty if it created a dangerous condition even though it did not control the premises. *See id.* In the case at hand, the ground was simply that there was no evidence of a legal duty.

Our dissenting colleague states that (1) Registered Teams sought a no-evidence summary judgment as to duty based on a legal standard that conflicts with the inherent-risk doctrine and (2) Registered Teams acknowledged in its motion that Brown owed a negligence duty to Robin. *See post* at p. 117. These assertions are incorrect. Registered Teams asserted that there is no evidence of duty. As discussed above, Registered Teams did not specify a legal standard for this no-evidence ground, and it was not required to do so. In the part of the motion quoted in the dissenting opinion, Registered Teams asserts there is no evidence of a breach of any duty. *See id.* Parties are allowed to assert alternative summary-judgment grounds. *See Canchola v. White*, No. 14–03–00826–CV, 2004 WL 3008673, at *4 (Tex.App.-Houston [14th Dist.] Dec. 30, 2004, no pet.). If there is no evidence showing duty, there cannot be any breach of duty. However, a no-evidence point as to the breach-of-duty element presumes for the sake of argument that there is a duty. Under the inherent-risk doctrine, if, applying the above analysis, the risk that resulted in Robin's injury is not inherent in the nature of the sport in question, then Brown would owe Robin the ordinary negligence duty to which Registered Teams refers in the portion of the motion quoted in the dissenting opinion. *See post* at p. 117. Registered Teams's reference to this negligence duty in argument under its alternative ground attacking breach of duty is not an admission that Brown owed Robin such a duty. Registered Teams did not base its no-evidence ground attacking duty on a legal standard that conflicts with the inherent-risk doctrine.

In his dissenting opinion, our esteemed colleague argues that, because of the general nature of Registered Teams's no-evidence ground, Robin was not on notice as to the legal standard to be used in the duty analysis. Given that the Texas Supreme Court has not determined which legal standard applies in this context, our dissenting colleague asks whether Robin was supposed to have presented summary-judgment evidence as to the duty analysis under the inherent-risk doctrine as well as the no-negligence-duty approach adopted by some of our sister courts. *See post* at p. 118, n. 4. Under the no-negligence-duty, as a matter of law, a sports participant never owes

duty, Robin did not produce summary-judgment evidence bearing on the issue of whether the risk that resulted in her injury was inherent in the nature of the sport in which she was participating when she was injured. The summary-judgment evidence does not raise a fact issue as to whether, considering from an objective standpoint (i) the nature of the sport in question, (ii) the conduct that is generally accepted in that sport, and (iii) the risks resulting therefrom, the risk that resulted in Robin's injury is not inherent in the nature of the sport in which she chose to participate.[13] Furthermore, presuming for

the sake of argument that Registered Teams could be vicariously liable for any intentional or grossly negligent conduct of Brown, Robin does not claim that Brown intentionally caused her injury, and the summary-judgment evidence does not raise a genuine issue of material fact as to whether Brown's conduct constituted gross negligence.[14] Therefore, the trial court did not err in granting Registered Teams's motion for summary judgment as to the vicarious-liability claims.[15] Accordingly, we overrule Robin's second and third issues in which she challenges this summary-judgment ruling.[16]

another sports participant a negligence duty. Therefore, under that approach there would not be any evidence Robin could have presented. However, if there is uncertainty as to the legal standard for analyzing duty, the nonmovant should present evidence addressing the various possible legal standards. *See* Tex.R. Civ. P. 166a(i) & cmt.; *Pico*, 209 S.W.3d at 912; *Mathis*, 189 S.W.3d at 844–45; *Patino*, 158 S.W.3d at 659–60. Our dissenting colleague indicates that Robin had no notice that the inherent-risk doctrine might apply, but at the time the summary-judgment motion was served on Robin, the Texas Supreme Court had recently described the inherent-risk doctrine as a possible legal standard, and the high court noted that it had not yet decided which legal standard applies under Texas law. *See Southwest Key Program, Inc.*, 81 S.W.3d at 271–72.

In sum, for the reasons stated above, it is appropriate for this court to address the inherent-risk doctrine based on the no-evidence ground raised by Registered Teams.

13. This court is not basing its decision on a summary-judgment ground raised for the first time on appeal or on a conclusion that Robin did not state a cause of action in her pleadings or on any basis that should properly be raised by special exceptions. *See post* at p. 118.

14. Likewise, the summary-judgment evidence does not raise a genuine issue of material fact as to Brown's alleged breach of duty by allegedly knowingly or recklessly assaulting Robin.

15. Our dissenting colleague states that, despite being aware of the inherent-risk doctrine, the Texas Legislature has imposed it by statute only in the context of liability arising from equine activities or livestock shows. *See post* at pp. 119–20, n. 9; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 87.001, *et seq.* (Vernon 2005) (stating that, with some exceptions, persons are not liable for property damage or personal injury to participants in an equine activity or livestock show if it results from dangers or conditions that are an inherent risk of an equine activity or livestock show). However, this statute does not state that the inherent-risk doctrine applies only in this context. The Texas Legislature's adoption of the inherent-risk doctrine in one context does not prevent this court from adopting the inherent-risk doctrine in another context.

16. Although in these two issues the Chrismons focus on the breach-of-duty element and Registered Teams's assertion that the incident in question was "an accident," we consider a challenge to the trial court's no-evidence summary judgment to be a subsidiary question that is fairly included in these two issues. *See* Tex.R.App. P. 38.1(e).

**E. Can this court reverse the trial court's judgment as to the vicarious-liability claims in the interests of justice and remand to the trial court to give the parties an opportunity to present evidence regarding the inherent-risk legal standard?**

In part of its appellate brief Registered Teams asks this court to adopt the inherent-risk doctrine. Robin has not requested that, in the event this court does so, this court remand this case to the trial court in the interests of justice. But even if Robin had requested this relief, it would not be available under Texas Supreme Court precedent. If this court reverses the trial court's judgment, it may remand in the interests of justice for another trial. *See* TEX. R APP. P. 43.3(b). However, a court of appeals can reverse the trial court's judgment only when the trial court is in error. *See Davis v. Bryan & Bryan, Inc.*, 730 S.W.2d 643, 644 (Tex.1987) (holding that the court of appeals can only reverse when there is error in the trial court's judgment and that, absent such error, a court of appeals cannot reverse the trial court's judgment in the interests of justice); *Estate of Clinton v. Southern Pac. Transp. Co.*, 709 S.W.2d 636, 639 (Tex.1986) (stating that a court of appeals cannot reverse an errorless judgment); *Sears & Roebuck & Co. v. Marquez*, 628 S.W.2d 772, 773 (Tex.1982) (holding that courts of appeals may only reverse the trial court's judgment based on error in the judgment and cannot reverse the judgment because the case has not been fully developed). Interestingly, the Texas Supreme Court has held that it has the power to vacate the errorless judgments of the trial court and court of appeals and remand to the trial court for further proceedings based on a change in the law. *See In re Doe 4*, 19 S.W.3d 322, 327 (Tex. 2000); *In re Doe 2*, 19 S.W.3d 278, 283–84 (Tex.2000). However, our high court has based these holdings on subsection (f) of Texas Rule of Appellate Procedure 60.2; the analogous rule for the courts of appeals does not contain this subsection. *Compare* TEX. R APP. P. 60.2 *with* TEX. R APP. P. 43.2; *see also In re Doe 4*, 19 S.W.3d at 327; *In re Doe 2*, 19 S.W.3d at 283–84. Thus, under current law, the Texas Supreme Court has the power to vacate the trial court's judgment based on a change in the law and remand this case to the trial court for further proceedings, but courts of appeals do not have this power. Therefore, we cannot reverse the trial court's judgment unless we find error that has been preserved (unless preservation is unnecessary) and assigned on appeal. We have found no such error in this case.[17]

---

17. Our dissenting colleague asserts that this court should apply the *Chevron* factors and decide not to apply this court's decision regarding the inherent-risk doctrine retroactively to the case at hand. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 719–20 (Tex.1996) (applying the *Chevron* factors in determining whether Texas Supreme Court decision should be applied retroactively). Presuming, without deciding, that courts of appeals have the ability to make their decisions prospective only based on these factors, the factors do not weigh in favor of an exception to the norm of retroactivity for *court decisions. This court does not over-rule any past precedent,* and the history, purpose, and effect of the rule do not weigh against a retroactive application. We do address an issue of first impression in this court; however, the resolution of this issue for the Fourteenth Court of Appeals was clearly foreshadowed by the decisions in other courts of appeals and the Texas Supreme Court's reference to the various possible rules. *See Southwest Key Program, Inc.*, 81 S.W.3d at 271–72. Applying this decision to the case at hand does not produce substantial inequitable results. If this court had followed the decisions of the other four courts of appeals that already have addressed this issue, there would be no negligence duty as a matter of law, and this court's judgment would be the same.

### IV. Conclusion

Robin does not claim that Brown intentionally caused her injury, and the summary judgment evidence does not raise a genuine issue of material fact as to whether Brown's conduct constituted gross negligence. The trial court did not err in granting Brown's motion for summary judgment based on his defense of immunity. Likewise, the trial court did not err in granting summary judgment as to all direct-liability claims against Registered Teams and as to all of Lonnie's claims.

As a matter of first impression in this court, we hold that (1) a sports participant owes no negligence duty to another sports participant regarding risks inherent in the sport in question; (2) a sports participant owes a negligence duty to another sports participant regarding risks that are not inherent in that sport; and (3) regardless of whether the risk is inherent, a sports participant owes a duty not to cause injury to another sports participant by gross negligence or intentional conduct. The summary-judgment evidence did not raise a fact issue as to whether the risk in question is inherent in the sport in which Robin was engaged when she was injured. The trial court correctly granted summary judgment as to the vicarious-liability claims, and this court cannot reverse because that ruling was not in error and because courts of appeals cannot reverse errorless judgments and then remand in the interests of justice based on a new development in the law. Therefore, having found no error, we affirm the trial court's judgment.

EDELMAN, J., dissenting.

RICHARD H. EDELMAN, Senior Justice, dissenting.

For the following reasons, I disagree with the Majority Opinion's decision to adopt an inherent risk limitation on the liability of sports injury defendants and to affirm on that basis the summary judgment against the Chrismons' claims for vicarious liability against Registered Teams.

First, because neither party asserted adoption (or non-adoption) of the inherent risk standard in the trial court, no decision on that issue is before us for review, and it is not a ground on which the summary judgment can be affirmed.[1] Although Registered Teams's no-evidence motion for summary judgment (the "motion") stated that the Chrismons had no evidence of "a legal duty owed by one person to another," it then proceeded to not only acknowledge the existence of a duty, but also to identify it and assert there was no evidence of a breach of that duty:

> The plaintiff must establish both the existence of a duty and the violation of that duty by the defendant.

> More importantly, *the duty that the Plaintiffs must prove to have been breached is the duty to act as a reasonable person under the specific circumstances in question.* In the present context, Brown was a volunteer softball coach. *Plaintiffs have failed to show that his actions . . . were unreasonable* in light of his role or the common activity in which both he and Robin Chrismon were engaged.

---

1. *See, e.g., Haase v. Glazner,* 62 S.W.3d 795, 800 (Tex.2001) (reiterating that summary judgment cannot be affirmed on an argument not expressly presented in the motion for summary judgment); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911–12 (Tex. 1997) (holding that a traditional motion for summary judgment based on the no-duty ground of no exercise of control over the adjacent premises did not allow affirmance based on the no-duty ground of not having creating the dangerous condition); *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 805 (Tex.1994).

(citations omitted) (emphasis added).[2] On appeal, the Majority retroactively adopts a new and higher inherent risk negligence duty standard that the record does not reflect was ever mentioned in the trial court, and then affirms on the basis that Robin produced no evidence to create a fact issue on the "existence" of a duty under that newly raised standard.

Importantly, however, there is no question on the *existence*[3] of a legal duty in this case, but only on the standard of liability that applies to that duty. Everyone, including the Majority, agrees that Registered Teams owed Robin a legal duty, and the Majority even acknowledges that the inherent risk duty that Registered Teams owed to Robin is a negligence duty. There is thus only a dispute as to whether the applicable standard of liability for that negligence duty should be ordinary negligence or inherent risk. Accordingly, the only real question is whether the Chrismons produced evidence to raise a fact issue on a breach of a negligence duty, and the summary judgment cannot be affirmed on a no-duty ground in any respect.

Regarding the breach of duty, an assertion of no evidence of a breach of the ordinary negligence duty, as asserted in the motion, is distinct from a contention that there is no evidence of breach under a higher (inherent risk) negligence standard, and the former does not put the nonmovant or trial court on notice that the latter is being asserted (which it was not in this case). Therefore, by affirming the summary judgment on a different ground than was presented in the motion, the Majority's decision defeats the objectives of: (1) putting the nonmovant on notice of the actual grounds for the summary judgment so they may have a fair chance to respond;[4] and (2) reviewing a summary judgment based on an issue that was actually before the trial court. Rather than using the no-evidence summary judgment procedure to fairly refrain from holding trials on claims for which evidence is lacking, this allows that procedure to be used as a disguised method of defeating claims on purely legal grounds that are raised for the first time on appeal and then applied to the case retroactively.[5] It thus serves no useful purpose, but merely creates a mechanism for summary judgment by ambush.

Similarly, by affirming the summary judgment on a different legal standard than was either pleaded or asserted in the summary judgment materials, or was existing under prevailing law, the Majority allows a no-evidence summary judgment to

---

2. Although inconsistent positions can be asserted in the alternative, Registered Teams's motion contained no language indicating any such intent.

3. A true no-duty case is where, for example, a property owner asserts that it owes no legal duty *of any kind* to a plaintiff for an injury caused by a premise defect because the property owner retained no right of control over the property. *See, e.g., Science Spectrum*, 941 S.W.2d at 911–12. The Majority actually rules that there is no evidence of a *breach* of the inherent risk negligence duty that it acknowledges was owed, but attempts to label that ruling as no evidence of a duty.

4. Was Robin also required to raise a fact issue under each of the other two alternative liability standards identified in the Majority Opinion in case it might have chosen to adopt one of those instead?

5. Court decisions should not be applied retroactively where, as is likely here: (1) the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; or (2) retroactive application could produce substantial inequitable results. *See, e.g., Baker Hughes, Inc. v. Keco R. & D. Inc.*, 12 S.W.3d 1, 4–5 (Tex. 1999).

be granted and affirmed for what it has essentially turned into an after-the-fact failure to state a cause of action (by pleading a now inapplicable standard for the negligence duty that it concedes was owed) without requiring special exceptions to be filed or allowing the plaintiff an opportunity to replead.[6]

Second, although this may be an issue of first impression in this court, at least seven opinions from five other Texas appeals courts have addressed the duty standard applicable to sports injuries, and all seven applied or recognized the reckless or intentional conduct standard.[7] The Texas Supreme Court denied review in five of the six of those cases in which a writ application was filed, and reversed on other grounds in the sixth.[8] More importantly, however, in two of the five cases in which review was denied, three justices dissented specifically on the ground that the inherent risk standard should be adopted, but a majority of the Court nevertheless declined to do so. *See Phi Delta Theta Co. v. Moore*, 10 S.W.3d 658, 658–62 (Tex.1999) (Enoch, J., dissenting); *Davis v. Greer*, 940 S.W.2d 582, 582–83 (Tex.1996) (Gonzalez, J., dissenting). In this case, by adopting a standard that the Texas Supreme Court has twice affirmatively declined to adopt, does the Majority Opinion presume to tacitly overrule those decisions or to just extend the Court another opportunity and invitation to finally "get it right?"

Third, contrary to the simplistic manner in which the Majority casts this issue, it involves important, wide-ranging, and competing policy considerations with which courts in Texas and elsewhere have had considerable difficulty, not only in selecting among the alternative standards, but, more importantly, in finding a uniform or coherent basis on which to apply any of them.[9] Any decision on whether to adopt

---

**6.** *See, e.g., Friesenhahn v. Ryan*, 960 S.W.2d 656, 658–59 (Tex.1998) (reversing summary judgment, claiming that pleadings failed to state a cause of action by not alleging a legal duty owed by the defendants, because plaintiffs had not been put on notice that their pleadings were deficient and given an opportunity to amend); *Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex.1989) (reiterating that unless the petition affirmatively demonstrates that no cause of action exists or that the plaintiff's recovery is barred, a trial court must give a plaintiff an opportunity to amend before granting a summary judgment on the plaintiff's failure to plead facts that state a cause of action).

**7.** *See Southwest Key Program, Inc. v. Gil-Perez*, 79 S.W.3d 571, 575–76 (Tex.App.-Corpus Christi 2000), *rev'd on other grounds*, 81 S.W.3d 269, 274–75 (Tex.2002); *Monk v. Phillips*, 983 S.W.2d 323, 324–26 (Tex.App.-Fort Worth 1998, pet. denied); *Moore v. Phi Delta Theta*, 976 S.W.2d 738, 741–42 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Greer v. Davis*, 921 S.W.2d 325, 328–29 (Tex.App.-Corpus Christi 1996, writ denied); *Allen v. Donath*, 875 S.W.2d 438, 440 (Tex.App.-Waco 1994, writ denied); *Hathaway v. Tascosa*

*Country Club, Inc.*, 846 S.W.2d 614, 616–17 (Tex.App.-Amarillo 1993, no writ); *Connell v. Payne*, 814 S.W.2d 486, 489 (Tex.App.-Dallas 1991, writ denied). Because Registered Teams did not seek summary judgment based on the intentional-reckless duty standard, the summary judgment could not have been affirmed on the Chrismons' failure to present evidence to satisfy that standard.

**8.** *See supra*, note 7.

**9.** *See, e.g.*, Matthew G. Cole, *No Blood No Foul: The Standard of Care in Texas Owed by Participants to One Another in Athletic Contests*, 59 Baylor L.Rev. 435 (2007). Similarly, although aware of the inherent risk standard, the Legislature has seen fit to impose it in only one very limited context, that being injury or damage occurring in an equine activity or livestock show. *See* Tex. Civ. Prac. & Rem.Code Ann. § 87.003 (Vernon 2005). Moreover, although former Justice Enoch has argued that the inherent risk doctrine is somehow distinct from the former implied assumption of the risk doctrine that has, with exceptions not applicable here, been subsumed into comparative responsibility, it is not apparent to me how the two are concep-

a completely different liability standard than any other Texas appeals court has applied should be made by the Texas Supreme Court after the issue has been properly developed in the lower courts and adequately briefed and analyzed, none of which has occurred in this case.[10]

## SUPPLEMENTAL MAJORITY OPINION

KEM THOMPSON FROST, Justice.

■■■ In their motion for rehearing, appellants Robin Chrismon and Lonnie Chrismon assert arguments grounded on the proposition that appellee Registered Teams of the Amateur Softball Association of America, in its motion for summary judgment, did not assert any no-evidence grounds against the vicarious-liability claims. The Chrismons urge that, even though Registered Teams asserted in its motion that there is no evidence of duty, it asserted a traditional ground rather than a no-evidence ground because, among other things, (1) the words "no evidence" do not

appear in the title of the motion or in any heading in the motion; (2) the motion does not contain a citation to Texas Rule of Civil Procedure 166a(i) or the standard of review for no-evidence summary-judgment motions; (3) Registered Teams attached evidence to its motion and quoted from that evidence; and (4) other grounds asserted in the motion are traditional grounds for summary judgment.[1]

The Texas Supreme Court has held that attaching evidence to a motion or including other traditional summary-judgment grounds in the motion does not foreclose the movant from asserting no-evidence grounds in the motion. *See Binur v. Jacobo,* 135 S.W.3d 646, 650–51 (Tex.2004). Likewise, our high court has concluded that, while it would be helpful for the movant to use headings to clearly delineate which summary-judgment grounds are based on Rule 166a(i), such clarity is not required for the assertion of a no-evidence ground. *See id.* According to the Texas Supreme Court, if the movant clearly sets

---

tually different. *See Phi Delta Theta,* 10 S.W.3d at 659–62 (Enoch, J., dissenting).

**10.** Even Justice Enoch's dissent recognizes that the policy justifying a heightened sports liability standard is to prevent tort liability from curtailing the competitive fervor with which sports should be played. *See Phi Delta Theta,* 10 S.W.3d at 660–61. However, contrary to the Majority's treatment of Robin as a participant in this case, she was not a player, and her injury did not result from any competitive activity by a player. A heightened standard is thus no more justified in this context than if Brown had inadvertently jammed Robin's hand in the dugout gate or dropped the equipment bag on her foot.

**1.** The Chrismons also state that Registered Teams admitted the existence of duty in its motion; however, we addressed this issue on original submission. *See Chrismon v. Brown,* 246 S.W.3d 102, 114, (Tex.App.-Houston [14th Dist.] 2007, no pet. h.). The Chrismons

also state that *Sterner v. Marathon Oil Co.* would provide the standard of review as to any traditional summary-judgment ground that Registered Teams asserted against the essential elements of the Chrismons' claims. *See* 767 S.W.2d 686, 690 (Tex.1989). This is incorrect; rather, *Sterner* deals with a legal-sufficiency challenge to an adverse fact finding as to which the appellant had the burden of proof at trial. *See id.* The Texas Supreme Court has stated that, in reviewing a summary-judgment de novo, appellate courts must consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex.2007).

forth its no-evidence grounds and meets Rule 166a(i)'s requirements, then the movant has asserted these no-evidence grounds. *See id.* Disagreeing with the court of appeals's conclusion that the movant in *Binur* had asserted only traditional summary-judgment grounds, the Texas Supreme Court held that the movant sufficiently asserted a no-evidence ground attacking the essential element of proximate cause because "[movant's] motion for summary judgment asserted that there was no evidence of proximate cause." *Id.* at 651. Registered Teams satisfied Rule 166a(i) and asserted a no-evidence ground in which it attacked the essential element of duty. *See id.* (concluding movant satisfied Rule 166a(i) and asserted no-evidence ground by stating in motion that there was no evidence of an essential element of plaintiff's claim); *Alaniz v. Rebello Food & Beverage, L.L.C.,* 165 S.W.3d 7, 11–12 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding movant satisfied Rule 166a(i) and asserted no-evidence grounds by stating two essential elements of the plaintiffs' claims and asserting that there was no evidence of these elements). Thus, we find no merit in the Chrismons' rehearing arguments premised on Registered Teams's purported failure to assert a no-evidence ground attacking duty.[2] The Chrismons' motion for rehearing is denied.

EDELMAN, J., dissents without opinion on rehearing.

---

2. In their final argument on rehearing, the Chrismons assert that, even if Registered Teams asserted a no-evidence ground as to duty, this court has affirmed that motion on a ground not asserted in Registered Teams's motion—the inherent-risk doctrine. We addressed this argument on original submission. *See Chrismon,* 246 S.W.3d at 113–15. We stand by this analysis.